# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ROBERT A. JAMES, JR. and<br>DAWN M. JAMES, | : | C.A. No. K16C-08-028 JJC |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| ROBERT WILLIAMS,<br>PETE STORE-DELAWARE, LLC, a<br>Delaware limited liability company,<br>and PETE STORE-SEAFORD,<br>LLC, a Delaware limited liability<br>company, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION AND ORDER

Submitted: November 17, 2017
Decided:  November 30, 2017

**Upon the Defendant Pete Store Delaware, LLC's Motion for Partial Summary Judgment – GRANTED**

Scott E. Chambers, Esquire & Gary E. Junge, Esquire, SCHMITTINGER & RODRIGUEZ, P.A., Dover, Delaware, *Attorneys for Plaintiffs*.

Thomas P. Leff, Esquire, CASARINO, CHRISTMAN, SHALK, RANSOM & DOSS, P. A., Wilmington, Delaware, *Attorney for Defendant Robert Williams*.

Benjamin C. Wetzel, III, Esquire, WETZEL & ASSOCIATES, Wilmington, Delaware, *Attorney for the Defendants, Pete Store-Delaware, LLC & Pete Store-Seaford, LLC*.

Defendant Pete Store Delaware, LLC (hereinafter "Pete Store" or the "Company") moves for partial summary judgment regarding Plaintiff Robert A. James, Jr's (hereinafter "Mr. James'") claim against it for punitive damages. Mr. James sues Pete Store and its employee, Defendant Robert Williams (hereinafter "Mr. Williams") for automobile accident related injuries allegedly caused by Mr. Williams' negligence and recklessness. Mr. James alleges that Pete Store is vicariously liable for both compensatory *and* punitive damages. The Company's potential liability for punitive damages is at issue. Although such a claim is generally decided as one of fact, in this case, the factual record does not generate a triable issue of fact that would permit a reasonable jury to hold the tortfeasor's employer vicariously liable for punitive damages. For that reason and those outlined herein, Pete Store's motion for partial summary judgment is GRANTED.

## I.    Factual Background

Discovery in this case has concluded. The facts recited herein are those of record, and are viewed in the light most favorable to the non-moving party. Pete Store is a Peterbuilt truck dealer in Seaford, Delaware where Mr. Williams was employed as a service manager. The extent of the record regarding Mr. William's duties evidences that he was to make sure work was performed in a timely manner and that he collected payment from customers.[1] In an affidavit submitted in support of the motion, Douglas Cole (hereinafter "Mr. Cole"), the Vice President of Finance for Pete Store, described Mr. Williams duties as "supervising the service department and collecting payments from customers in the service department".[2] However, according to Mr. Cole, Mr. Williams was not considered a principal or managerial agent of Pete Store.[3] The same affidavit provided that Mr. Williams reported to a

---

[1] Willams Dep. 3. March 8, 2017.
[2] Cole Aff. ¶ 2, October 9, 2017.
[3] *Id*. at ¶ 4.

Regional Service Manager, who reported to a Vice President and General Manager, who in turn reported to the President and CEO.[4]

On or about April 21, 2016, Mr. James arrived at Pete Store to pick up his son's truck after repairs. The repair cost was $17,298.52. After a test drive, Mr. James provided Mr. Williams with a check for the cost of the repairs. Pete Store alleges that Mr. James was unhappy with how long it took the repairs to be completed. Based on the parties' history, Mr. Williams was eager to get Mr. James out of the shop as quickly as possible. At some point, Mr. James became irritated that his check was taking a long time to process. He accordingly left the store and took the truck. Mr. James alleges that he informed Mr. Williams that he was leaving with the truck and to call him if there were any problems.

After Mr. James took his son's truck, Pete Store's check guarantee center advised Mr. Williams that the check could not be certified. Mr. Williams then left the Pete Store in his personal vehicle to chase Mr. James. After Mr. Williams caught up with Mr. James, Mr. James pulled onto a median on the highway. Despite demand, Mr. James refused to return to the store because he needed to return the truck to his son. Mr. James told Mr. Williams that he could call him if there were any problems with his check because he had more than sufficient funds in his account to cover the check.

At that point, in an apparent attempt to force Mr. Jones to return to the store, Mr. Williams reached into Mr. James' vehicle, grabbed his cell phone, and returned to his car. Mr. James then approached Mr. Williams car to recover his cell phone. While the facts about what happened next remain in dispute, for the purposes of summary judgment, as Mr. James reached into Mr. Williams vehicle to retrieve his phone, Mr. Williams recklessly pulled away with Mr. James caught on the outside of the vehicle. Mr. James suffered injuries as a result.

---

[4] *Id*. at ¶ 5.

## II.    Discussion

Summary judgment may only be granted if the record shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[5]  The Court must view the evidence in the light most favorable to the non-moving party.[6]  The burden of proof is initially on the moving party.[7]  However, if the movant meets his or her initial burden, then the burden shifts to a non-moving party to demonstrate the existence of material issues of fact.[8]  If the non-moving party is the party who will bear the burden of proof at trial, then to survive summary judgment, that party is obliged to point to facts in the record that will support its *prima facie* case at trial.[9]  The non-movant's evidence of material facts in dispute must be sufficient to withstand a motion for judgment as a matter of law and must support the verdict of a rational jury.[10] The non-movant may not simply rest on his on her allegation that there are genuine issues of material fact without referencing such facts in the record.[11]

Delaware courts consistently look to the *Restatement (Second) of Torts* § 909 (1979) to determine whether a jury may award punitive damages against an employer for the act of an employee.[12] *The Restatement (Second) of Torts* provides that:

---

[5] Super. Ct. Civ. R. 56(c); *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).
[6] *Brozaka v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).
[7] Super. Ct. Civ. R. 56(e); *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).
[8] *Id*. at 681 (citing *Hurtt v. Goleburn*, 380 A.2d 145 (Del. 1974)).
[9] *Burkhart v. Davies*, 602 A.2d 56, 59 (Del. 1991)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).
[10] *Lum v. Anderson*, 2004 WL 772074, at *2 (Del. Super. 2004)(citing James W. Moore et. Al., *Moore's Federal Practice* § 56.03[3], at 56-35 (2d ed. 2003)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-252 (1986) and *Cerberus Int'l, Ltd. V. Apollo Mgmt., L.P.*, 794 A.2d 1141, 1148-1149 (Del. 2002)(en banc)(adopting *Liberty Lobby's* "main holding" that the substantive proof required at trial should be the substantive standard of proof at the summary judgment stage)).
[11] *Burkhart v. Davies*, 602 A.2d 56, 59 (Del. 1991).
[12] *Ramada Inns, Inc. v. Dow Jones & Co., Inc.,* 1988 WL 15825 at *1 (Del. Super. Ct. 1988); *Taylor v. Christiana Care Health Services, Inc.*, 2012 WL 1415779 at *2 (Del. Super. Ct. 2012); *Pearson v. Semans*, 1991 WL 89821 at *1 (Del. Super. Ct. 1991).

4

[p]unitive damages can properly be awarded against a master or other principal because of an act by agent if, but only if:

(a) The principal or a managerial agent authorized the doing and the manner of the act, or
(b) The agent was unfit and the principal or a managerial agent was reckless in employing or retaining him, or
(c) The agent was employed in a managerial capacity and was acting the scope of his employment, or
(d) The principal of a managerial agent of the principal ratified or approved the act.[13]

Comment b. to this same provision provides that "[a]lthough there has been no fault on the part of a corporation or other employer, if a person acting in a managerial capacity either does an outrageous act or approves of the act by a subordinate, the imposition of punitive damages upon the employer serves as a deterrent to the employment of unfit persons for important positions."

Mr. James primarily argues that Pete Store is liable for punitive damages arising from Mr. Williams' tortious acts pursuant to *Restatement (Second) of Torts* § 909(c). Namely, he argues that Mr. Williams was employed in a managerial capacity and that he was acting in the scope of his employment when he injured Mr. James.[14] While the main dispute focuses on whether Mr. Williams was acting in a managerial capacity, the Restatement provision at issue also requires an analysis regarding whether the tortfeasor was acting within the scope of employment.[15]

---

[13] *Restatement (Second) of Torts* § 909 (1979).
[14] Mr. James also contends that the facts at trial may show that the Pete Store was reckless in employing or retaining Mr. Williams under *Restatement (Second) of Torts* § 909(b). Additionally, Mr. James argues that Pete Store ratified Mr. Williams actions under *Restatement (Second) of Torts* § 909(d) because the company failed to implement policies prohibiting Mr. Williams actions and that Mr. Williams was not disciplined for his actions. Mr. James, however, does not identify any facts of record that support such claims. The discovery period has concluded and the mere possibility that evidence at trial could support such claims does not generate a genuine issue of material fact under either of these additional *Restatement* provisions.
[15] *Taylor v. Christiana Care Health Services, Inc.*, 2012 WL 1415779 at *2 (Del. Super. Ct. 2012).

*The Restatement (Second) of Torts* looks to the *Restatement (Second) of Agency* § 228 (1958) to determine whether actions taken by an employee are within the scope of employment. It provides that conduct is within the scope of employment if:

> (a) It is the kind he is employed to perform;
> (b) It occurs within the authorized time and space limits;
> (c) It is activated, in part at least, by a purpose to service the master; and
> (d) If force is used, the force is not unexpectable.[16]

Delaware courts have taken a broad view of whether an employee's actions are within the scope of employment. An employee's violent actions taken while performing expected tasks are, almost universally, found to create a factual issue to be decided by the jury.[17] Here, there is no doubt that Mr. Williams duties included collecting payment, that his actions occurred while working for Pete Store, and that his actions were done in service of Pete Store. The only remaining question is the extent to which Mr. Williams' actions were foreseeable. Under the liberal standards of *Draper v. Olivere Paving & Const. Co.*[18] and *Doe v. State*[19] for analyzing foreseeability for the purposes of summary judgment, the Court concludes that there are sufficient facts for a reasonable jury to rely upon in finding the actions were foreseeable. Thus a reasonable jury could conclude that Mr. Williams was acting

---

[16] *Restatement (Second) of Agency* § 228 (1958).

[17] *See e.g. Doe v. State*, 76 A.3d 774, 777 (Del. 2013)(finding that a police officer committing sexual assault on someone in his custody should be considered within the scope of employment under § 228 for the purposes of summary judgment); *Draper v. Olivere Paving & Const. Co.*, 181 A.2d 565, 571 (Del. 1962)(finding that a construction worker, while directing traffic, cutting a motorist's neck after an argument was foreseeable, and that he was acting in the scope of his employment).

[18] 181 A.2d 565, 571 (Del. 1962).

[19] 76 A.3d 774, 777 (Del. 2013).

within the scope of his employment.[20]  Consequently, this matter turns on whether Mr. Williams acted in a managerial capacity when Mr. James was injured.

In evaluating this portion of the claim, the Court starts with the United States Supreme Court's decision in *Kolstad v. American Dental Ass'n.*[21]  There, the Supreme Court noted that "unfortunately, no good definition of what constitutes a 'managerial capacity' has been found" and "determining whether an employee meets this description requires a factually intensive inquiry."[22]  In determining managerial capacity, the Court directed lower courts to "review the type of authority that the employer has given to the employee, the amount of discretion that the employee has in what is done, and how it is accomplished."[23]  Moreover, according to the Supreme Court, to have managerial capacity, the employee "must be 'important,' but perhaps need not be the employer's 'top management, officers, or directors' to be acting 'in a managerial capacity.'"[24]

Mr. Williams relies upon *Sackett v. ITC Deltacom, Inc.*[25], where the Eastern District of Tennessee analyzed *Kolstad*, and determined that "where an employee fits within the employer's hierarchy will be particularly relevant . . .. The higher in the hierarchy, the more likely the employee is a management agent."[26]  Moreover, the *Sackett* Court persuasively recognized that courts must "look behind an employee's title to determine whether he or she was acting in a managerial capacity"

---

[20] Mr. Williams did not argue, either in his written motion or at oral argument, that summary judgment was warranted regarding the sub-issue of scope of employment.

[21] 527 U.S. 526, 543-544 (1999).  While *Kolstad* is not binding authority regarding this state law tort claim and also analyzes the *Restatement* provision at issue in the separate context of a Title VII employment discrimination claim, it constitutes the best developed persuasive authority on the issue.  If anything, a higher level of managerial capacity could arguably be required to impute punitive damage liability for tortious conduct that does not involve employment discrimination. Regardless, its suggested factors are the appropriate way to analyze the issue at hand.

[22] *Id*. at 543.

[23] *Id*.

[24] *Id*.

[25] 374 F.Supp. 2d. 602 (E.D. Tenn. 2005).

[26] *Id*. at 622.

and that the inquiry is "necessarily fact intensive."[27] The fact intensive inquiry involves "closely examining the facts surrounding an employee's actions and limiting the group of employees whose actions can give rise to vicarious liability for punitive damages."[28]

In this matter, a review of the record leaves the Court with few facts to evaluate Mr. William's potential managerial capacity. Pete Store's two page affidavit states: (1) Mr. Williams responsibilities are "supervising the service department and collecting payments from customers in the service department"; (2) Mr. William's title is "service manager"; (3) Mr. Williams is at the bottom of the managerial hierarchy; and (4) Mr. Williams is not a principal or managerial agent.[29] The only other evidence in the record containing facts helpful in evaluating whether Mr. Williams serves in a managerial capacity are in is his deposition, where he described his responsibilities as "making sure work is completed in a timely manner" and "collect[ing] payments for work done."[30]

Pete Store, as the movant, met its initial burden of providing evidence that Mr. Williams did not possess managerial capacity at the time of the incident. Mr. Cole's affidavit asserts that Mr. Williams was at the bottom of the managerial hierarchy, and that he is not considered by the Company to be a managerial agent. All of these facts support a conclusion that Mr. Williams was not employed in a managerial capacity.

Accordingly, at that point in the summary judgment analysis, it is incumbent upon Mr. James to point to facts supporting a finding that Mr. Williams possessed managerial capacity that could trigger liability for punitive damages. Even when viewing all the facts of record in the light most favorable to Mr. James, there are

---

[27] *Id.*
[28] *Id.*
[29] Cole Aff., October 9, 2017.
[30] Willams Dep. 3. March 8, 2017.

insufficient facts to create a triable issue of fact in this instance. The Court acknowledges that this issue is extremely factual in nature and rarely appropriate to decide at the summary judgment stage. With virtually no facts of record addressing the factors relevant to the decision, however, partial summary judgment is appropriate in this case.

Using *Kolstad's* guidance, the Court should review the type of authority that Pete Store gave Mr. Williams, the amount of discretion that Mr. Williams had in performing his work, and how the work is accomplished. The record is devoid of evidence permitting a trier of fact to evaluate Mr. William's role at Pete Store. Simply relying upon the title of "service manager" alone is insufficient to permit a reasonable jury to conclude that Mr. Williams had managerial capacity given the necessity of evaluating various other factors. There are no facts in the record other than this title that could lead to in interference that Mr. Williams had any authority beyond what is typically given to a clerical position at an ordinary repair shop. Likewise, there is no information in the record regarding what type of discretion Mr. Williams was given to do his job, aside from Mr. Cole's assertion that he was not considered a managerial agent.

The *Kolstad* Court also persuasively focuses on the employee's importance, holding that they must be important to possess managerial capacity, but not necessarily be top management. Mr. Cole's affidavit places Mr. Williams at the bottom of the discussed managerial hierarchy. That also does not create an inference that Mr. Williams was "important" enough at Pete Store for his intentional or reckless tortious acts to be imputed to the company for the purposes of punitive damages. To the contrary, it supports the opposite conclusion, which is that Mr. William's role at Pete Store was more clerical in nature, and that he had either limited or no management authority.

9

Finally, although Mr. Cole's affidavit asserts that Mr. Williams responsibilities included "supervising the service department", there are no facts in the record to explain what authority he had when "supervising", whether it included supervision of other employees, or any other facts supporting that Mr. Williams was granted any authority or autonomy. Absent a developed record regarding his duties and authority, the Court is left to guess regarding these matters. Mr. James does not reference facts that substantiate his claim to the extent that a reasonable jury could infer that Mr. Williams had managerial capacity for purposes of vicarious liability for punitive damages.

### III. Conclusion

For the reasons set forth above, Mr. James does not identify sufficient facts to establish that there is a triable issue of fact regarding Pete Store's vicarious liability for punitive damages. Potential vicarious liability for compensatory damages and vicarious liability for punitive damages require different analyses. Notwithstanding that the claim at issue is highly factually in nature and not normally subject to summary judgment, under the facts of record in this case, Pete Store's motion for partial summary judgment is GRANTED.

**IT IS SO ORDERED**

/s/Jeffrey J Clark
Judge

10